Filed 5/24/21  P. v. Balbuena CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092002 |
| Plaintiff and Respondent, | (Super. Ct. No. 05F11542) |
| v. | |
| CARLINE BALBUENA, | |
| Defendant and Appellant. | |

Defendant Carline Balbuena appeals from the trial court's order denying her petition for resentencing under Penal Code section 1170.95.  Defendant contends the trial court erred by summarily denying her petition after determining she failed to establish a prima facie case under the provisions of the statute.  She argues the trial court should have issued an order to show cause and allowed the petition to proceed for full consideration on its merits.  We agree the trial court erred in denying defendant's petition and will remand the case for further proceedings.

1

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Defendant's Case*

In 2008, a jury found defendant guilty of first degree murder (Pen. Code, § 187, subd. (a)),[1] assault on a child resulting in death (§ 273ab), and child endangerment (§ 273a, subd. (a)).  The trial court sentenced defendant to a term of 25 years to life for the murder conviction plus six years for the child endangerment conviction.  The court also imposed a term of 25 years to life for the assault on a child conviction but stayed execution of that term under section 654.  On appeal, we affirmed the convictions but corrected errors regarding defendant's custody credits and the abstract of judgment.[2] (*People v. Balbuena* (Nov. 10, 2010, C060127) [nonpub. opn.] (*Balbuena*).)

In our opinion, we laid out the evidence introduced at trial.  In short, defendant had two young children.  Codefendant James Morris, along with his young daughter, moved into defendant's apartment to share expenses.  Over the following months, defendant and codefendant abused defendant's three-year-old son, culminating in his death.  (*Balbuena, supra*, C060127 [at pp. 2-8].)

In the appeal, defendant raised a variety of challenges to the jury instructions the trial court had provided.  The court instructed the jury on several theories of liability, including defendant as the perpetrator, direct aider/abettor liability, and liability under the natural and probable consequences doctrine.  (*Balbuena, supra*, C060127 [at pp. 23-26].) We were unable to determine which theory of liability was ultimately used to convict defendant, explaining:  "Review of Balbuena's claims of instructional errors, particularly

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  The People request we take judicial notice of our opinion from the direct appeal of defendant's case.  Defendant does not object to the request.  We will grant the request and take judicial notice of the opinion. (Evid. Code, §§ 459, subd. (a) ["The reviewing court may take judicial notice of any matter specified in Section 452"], 452, subd. (d) [permitting a court to take judicial notice of records of "any court of this state"].)

the three involving liability for the natural and probable consequences of aiding and abetting target offenses, is complicated because two defendants were tried before separate juries, each on three theories of liability for murder in the first degree, and yet we cannot decipher from the separate verdicts who was the perpetrator and who was the aider and abettor and, if Balbuena was the aider and abettor, on what theory of liability she was found guilty." (*Id.* [at p. 21].)

    B.    *Defendant's Petition*

    In 2019, defendant filed a form petition for resentencing under section 1170.95. In the petition, defendant declared that a complaint, information, or indictment had been filed against her that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, that she was convicted of first degree or second degree murder under the felony-murder rule or the natural and probable consequences doctrine, and that she could not now be convicted of first or second degree murder based on the recent changes to sections 188 and 189. She requested that the court appoint her counsel.

    The trial court appointed counsel and received briefing from the parties. The court then issued a written decision denying the petition. The court noted the jury had been instructed on the natural and probable consequences doctrine, saying: "The court also instructed the jury with CALCRIM No. 401, on direct aiding and abetting, and with CALCRIM No. 403, on the natural and probable consequences doctrine of aiding and abetting a murder, based on the target offenses of [ ] §§ 273d(a) and 273a(a). Thus, it is possible that the jury found Balbuena guilty of first degree murder by deciding that she was an aider and abettor of a specified assault on the child victim, and that the main perpetrator committed a murder (by means of torture) which was the natural and probable consequence of the assault on the child."

    Nonetheless, the court found that "given the evidence at trial," it was "highly unlikely that the jury convicted Balbuena of first degree murder solely under the natural

3

and probable consequences doctrine." The court considered the verdicts a separate jury rendered as to Morris, defendant's testimony and other statements, and autopsy evidence introduced at trial, and concluded the evidence was sufficient to establish defendant "herself inflicted what ended up being the fatal blow, or that she concurrently inflicted injuries, along with Morris, that were a substantial factor in the child's death." Thus, defendant had "not set forth a prima facie case for relief," and the court did not issue an order to show cause.

## DISCUSSION

Defendant contends the trial court erred by summarily denying her petition, even though she properly alleged a prima facie basis for relief, because there was a possibility her conviction was premised on a natural and probable consequences theory. Defendant argues the court could only deny her petition before issuing an order to show cause if the record of conviction " 'indisputably show[ed]' " she was ineligible for relief, and the court prematurely attempted to resolve disputed factual issues without an evidentiary hearing. The People agree the trial court weighed the evidence "too soon in the process and should have issued an order to show cause." We agree with the parties.

Senate Bill No. 1437 (2017-2018 Reg. Sess.), which became effective on January 1, 2019, was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to

4

proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial . . . . [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

Both parties agree the process contemplated in section 1170.95 includes two separate prima facie determinations. In the first determination, the trial court must review a defendant's petition and, reviewing the face of the petition in addition to other "readily ascertain[able]" materials (§ 1170.95, subd. (b)(2)), decide whether the petition falls within the purview of the section. If the petition survives the screening, and the defendant requests counsel, the trial court must appoint counsel and receive briefing on the defendant's eligibility for relief. The court then makes a second determination whether the petitioner has made a prima facie showing that they are entitled to relief. This understanding tracks the language of the statute and is in accordance with case law construing the statute. (§ 1170.95, subd. (c); *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 332, review granted Mar. 18, 2020, S260493; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139-1140, review granted Mar. 18, 2020, S260598.)

"[W]hen assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true. [Citation.] The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) The "authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd[ivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of

5

evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime).” (*Ibid.*)

“If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95, [subdivision] (a), then the trial court should issue an order to show cause. (§ 1170.95, [subd.] (c).) Once the trial court issues the order to show cause under section 1170.95, [subdivision] (c), it must then conduct a hearing pursuant to the procedures and burden of proof set out in section 1170.95, subd[ivision] (d) unless the parties waive the hearing or the petitioner’s entitlement to relief is established as a matter of law by the record. (§ 1170.95, subd. (d)(2).)” (*Drayton, supra*, 47 Cal.App.5th at pp. 980-981.)

Here, defendant stated in her declaration that she was convicted of murder under the natural and probable consequences doctrine, which would not have supported a murder conviction after the changes to sections 188 and 189. The record of conviction does not disprove this statement as a matter of law. Rather, as defendant notes, our opinion in the direct appeal of her convictions highlights the possibility she was convicted under a natural and probable consequences theory. (*Balbuena, supra*, C060127 [at p. 21].) While it is certainly possible that defendant was convicted on a theory of liability that is still permissible under sections 188 and 189, the mere existence of that possibility does not make defendant ineligible for relief as a matter of law. The fact that evidence supports defendant’s conviction on a valid theory does not mean the record conclusively establishes the jury actually relied on that theory, nor does it establish that the jury did not rely on a now invalid theory. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 814-815.) It was thus erroneous for the trial court to weigh the evidence to conclusively determine which theory of liability the jury had used to find defendant guilty. (*Drayton, supra*, 47 Cal.App.5th at p. 980.)

Construing the facts in favor of defendant, the petition fulfilled the requirements for relief in section 1170.95, subdivision (a), and the trial court should have issued an

6

order to show cause for an evidentiary hearing.  (*Drayton, supra*, 47 Cal.App.5th at pp. 982-983.)  We will reverse the trial court's order denying the petition and remand with directions to issue an order to show cause under section 1170.95, subdivision (c), and hold a hearing under section 1170.95, subdivision (d).  We express no opinion about whether defendant is entitled to relief following the hearing.[3]

## DISPOSITION

The trial court's order denying the petition for resentencing is reversed.  The case is remanded for the trial court to issue an order to show cause and hold a hearing to determine whether defendant is entitled to relief under section 1170.95.


_____/s/_____
RAYE, P. J.



We concur:



____/s/_____
BLEASE, J.



____/s/_____
HOCH, J.



_____

[3]  The parties dispute how to resentence defendant, assuming her success at an evidentiary hearing.  Because we express no opinion on the outcome of the evidentiary hearing, we will do the same with respect to any possible resentencing after the hearing.